```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ALGOOD CASTERS LIMITED,                                          :
                                                                 :
                        Plaintiff,                               :
                                                                 :         20-cv-4623 (LJL)
        -v-                                                      :
                                                                 :         OPINION & ORDER
                                                                 :
CASTER CONCEPTS, INC.,                                           :
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/4/2020
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Algood Casters Limited ("Algood") moves for a preliminary injunction and a temporary restraining order directing Caster Concepts, Inc. ("Caster") to cease and desist from using the designation "Maxx" on a stand-alone basis in connection with its sale of products, beginning the use of new trademarks incorporating the term Maxx, and emphasizing the "maxx" portion of its designations either by separation of that portion from the remaining designation or by capitalization or by similar effect.  Dkt. No. 10 at 2.

For the following reasons, Plaintiff's motion is denied.

## BACKGROUND

Plaintiff Algood is a corporation based in Ontario, Canada.  Algood designs, engineers, manufactures, and sells casters, which are mounted on the bottom of large objects such as furniture, shopping carts, food service equipment, and material handling equipment.  Dkt. No. 1 ("Compl.") ¶ 1.  The casters allow these large objects to be wheeled from one place to another.  *Id.*  Since at least 2001, Algood has used the trademark MAXX in connection with the sale of the casters it designs and manufactures.  *Id.*  Algood uses several forms of this trademark, including MAXX™, EMAXX™ and MAXX9™.  *Id.* ¶ 6.  Its marks are not registered.

Defendant Caster is a Michigan corporation engaged in the business of selling industrial and heavy-duty casters.  *Id.* ¶ 2.  Caster makes sales through its website and by means of call-in orders.  Dkt. No. 22-3 ¶ 21.  Algood alleges that Caster competes in the same market for casters as it does, but offers no further detail.  Compl. ¶ 2.  Caster acknowledges that it has been aware of Algood's presence in the caster marketplace since at least 2000.  Dkt. No. 22-3 ¶ 7.  Caster made a limited inquiry into acquiring or merging with Algood in 2001, but negotiations never passed beyond a preliminary stage.  *Id.* ¶¶ 9-10.  From 2015 until the filing of this lawsuit, Algood sometimes purchased casters and related parts from Caster.  *Id.* ¶ 22.

In 2015, Caster began using the marks ERGOMAXX and TWERGO on its casters. Compl. ¶ 12.  Caster claims that it began using these marks to signal to its customers that the products bearing the mark were designed for the heaviest types of industrial use.  Dkt. No. 22-3 ¶ 12.  On July 21, 2016, Caster filed an application with the United States Patent and Trademark Office ("USPTO") to register the trademark ErgoMaxx to be used in connection with casters. Compl. ¶ 12.  The USPTO advised Caster that another business (not Algood) had the trademark Ergo and that it regarded the proposed ErgoMaxx mark as too similar.  Dkt. No. 22-3 ¶ 15.  The USPTO deemed Caster's application abandoned on February 22, 2018.  *Id.*  On or about November 20, 2017, Caster began using the designation "Ergonomically ErgoMaxx Engineered."  Compl. ¶ 14.  On January 3, 2018, Caster applied to the USPTO to register Ergonomically ErgoMaxx Engineered as a trademark.  Dkt. No. 22-3 ¶ 16.  On November 19, 2019, the USPTO registered the mark.  *Id.* ¶ 17.  Sometime around January 2019, Caster also began using the designation Twergo Maxx in connection with some of its products.  *Id.* ¶ 30.  In 2019, Caster also used the designation Ergo® Maxx as two separate words.  Dkt. No. 12 ¶ 4.

Algood brought this action after allegedly seeing Caster's use of the Maxx trademark in a

video on Caster's website.  Compl. ¶ 16.  The video is cited as Exhibit G in the complaint, but does not presently appear in the record.  Algood seeks monetary damages and injunctive relief against Caster's use of the term "Maxx."  Compl. at 9-10.  Shortly after this action was filed, Caster posted a tweet that stated: "Looking to 'Maxx' out your cost savings during these uncertain times? Look no further than Ergomaxx!"  Dkt. No. 12 ¶ 6.  According to Caster's president, William Dobbins ("Dobbins"), Caster's third-party marketing company sent out the post, which was designed to promote Caster's Ergomaxx product line.  Dkt. No. 22-3.

      In support of its application for preliminary relief, Algood submits a declaration from its president, Craig Guttman ("Guttman").  Dkt. No. 12.  Guttman attests that Caster's use of Ergomaxx and Twergomaxx and its use of the term Maxx on its social media account will allow Caster to "free ride" on Algood's goodwill and reputation.  *Id*. ¶¶ 8-9.  Guttman further alleges that Caster's continued use of the marks will create confusion in the marketplace.  *Id.* ¶ 12.  This confusion, he continues, will lead to consumers purchasing Caster's products, thinking that they are the products produced by Algood.  This confusion, he further alleges, will result in lost profits for Algood.  *Id*. ¶ 14.

      Caster's president, Dobbins, provides a declaration in support of Caster's motion in opposition to preliminary relief.  According to Dobbins, "prior to the filing of this lawsuit, Caster never received a cease and desist letter or notice from Algood relating to any use of 'Maxx.'"  Dkt. No. 22-3 ¶ 23.  Dobbins claims that Caster never knew about the alleged infringement until this lawsuit was filed.  *Id*. ¶ 25.  Dobbins also states that Caster "has not received notice from its customers pertaining to any confusion or misunderstanding relating to the branding of its products as relating to Algood."  *Id*. ¶ 26.  Dobbins claims that Caster was never aware of Algood's "Maxx" product line prior to the filing of this lawsuit.  *Id*. ¶ 24.  Additionally, he avers

3

that Caster has no intention of expanding the use of the word 'maxx' to any other product lines besides Ergomaxx and Twergomaxx.  *Id.* ¶ 28.

## DISCUSSION

In cases involving a claim of trademark infringement, the Second Circuit has long held that a party seeking a preliminary injunction must demonstrate: (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.  *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)).  An irreparable harm is one that cannot be remedied through monetary damages.  *See Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010).

### A.     Irreparable Harm

Prior to the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), the Second Circuit held that irreparable injury was presumed once a trademark owner could make a sufficient showing of a likelihood of confusion.  *See, e.g.*, *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311 (2d Cir. 1987) (holding that a showing of a likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as the risk of irreparable harm).  In *eBay*, the Supreme Court held that, in order to receive a permanent injunction in a patent case, a plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  547 U.S. at 391.  It ruled that irreparable harm could not be

presumed.  *Id.*  In *Salinger*, the Second Circuit concluded that the *eBay* standard applied to preliminary injunctions in the copyright infringement context, requiring the moving party to offer proof of irreparable harm and not just rest on the fact of infringement.  607 F.3d at 77.  The Second Circuit has not yet decided whether a presumption of irreparable harm can arise from the fact of trademark infringement in light of *eBay*.  *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013) ("We need not here decide whether a presumption of irreparable harm from trademark infringement can apply in light of *eBay*.").  However, some courts in this district have applied the *eBay* standard to trademark cases.  *See, e.g.*, *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 498 (S.D.N.Y. 2013).  Those courts have reasoned that *eBay* precludes a court from presuming irreparable harm based upon a showing of a likelihood of success on the merits in an intellectual property case.  *Id.* at 503.

The Court need not come to a conclusion on this issue.  Plaintiff has not offered proof of irreparable injury under *eBay* and any presumption of irreparable harm would be rebutted under the Second Circuit's earlier test.  In short, Plaintiff has not shown that, in the absence of the requested injunction, it will suffer immediate irreparable harm that could not be compensable by money damages.

First, Algood delayed for years before filing this suit.  Caster has been using the ErgoMaxx mark since 2015 and the Twergo mark since 2019.  Algood has known of Caster's use of ErgoMaxx since at least last summer.  Yet, Algood did not bring suit based on the use of ErgoMaxx (or more precisely the use of "Maxx" to sell Caster's Ergo products) as soon as it learned of that use.  It waited.  Perhaps because of that delay, Algood does not seek to prevent Caster from using Maxx as part of the ErgoMaxx trademark of the Twergo Maxx trademark.  The case law is clear that the movant's unreasonable delay in asserting its rights is alone

5

sufficient to deny preliminary injunctive relief.  *See ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) ("We have long held in the context of trademark actions that where a person entitled to exclusive use of a trademark is guilty of unreasonable delay in asserting his rights against an infringer . . . a court of equity has the discretionary power . . . to deny injunctive relief.") (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 703 (2d Cir. 1970)); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (holding that a delay in seeking a preliminary injunction can weaken a claim of irreparable harm because "the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (holding that a delay in seeking a preliminary injunction "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial").  The movant's lack of urgency in protecting its rights undermines its claim that the Court should act urgently to protect those rights.

It does not help Algood that at this stage it is seeking only to enjoin the use of the term "Maxx" on a stand-alone basis to promote ErgoMaxx or Twergo Maxx.  There has been no showing by Algood that the use of Maxx separated by a blank space to promote ErgoMaxx or Twergo Maxx will cause consumer confusion or irreparable harm when there is no evidence that use of Maxx without the space did not cause such harm.

The Second Circuit's discussion of progressive encroachment in *ProFitness* is instructive.  There, in the context of discussing a complaint seeking permanent injunctive relief, the court stated that a plaintiff may receive "some latitude in the timing of its bringing suit" when it "waits until the likelihood of confusion looms large." *ProFitness*, 314 F.3d at 70 (quoting *Kellogg Co v. Exxon Corp.*, 209 F.3d 562, 570 (6th Cir. 2000)).  The logic, as the

6

Second Circuit explained it, is that "a plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant." *Id.* at 70.  To determine whether the doctrine of progressive encroachment excuses a delay, the court compares the likelihood of confusion from the earlier use of the mark of which the plaintiff was aware from the use of the mark at the time the plaintiff brings suit.  *Id.*  That doctrine thus does not help Algood on the record here.  Algood has failed to show that the limited use to which Caster has put Maxx on a stand-alone basis to market the ErgoMaxx products would cause any greater likelihood of confusion than the use of ErgoMaxx alone to market the ErgoMaxx products.

Second, even setting aside Algood's delay, the irreparable harms that Algood claims will follow from Caster's use of Maxx on a stand-alone basis to market the ErgoMaxx and Twergo Maxx products if this Court declines to issue an injunction are insufficiently concrete to justify preliminary relief.  Algood has not put forth any evidence that it has lost any business or will lose any business as a result of Caster's use of the allegedly infringing marks.  Further, it has not provided any evidence that suggests that it will lose control of its mark or its reputation.  To show irreparable harm, Algood relies entirely upon the declaration of its president, Guttman.  Guttman's declaration consists of a series of conclusory assertions which largely parrot the standards for preliminary injunctive relief in this Circuit.  Guttman states, for instance, that by using the Ergomaxx and Twergo Maxx marks, Caster "seek[s] to take advantage of Plaintiff's use of the Maxx Trademark," and that the "[d]efendant is attempting to free ride of Plaintiff's goodwill and excellent reputation in the marketplace." Dkt. 12 ¶¶ 8-9.  Guttman's declaration states that Caster's use of the Ergomaxx and Twergo Maxx marks will create confusion in the

marketplace and degrade the distinctive quality of Algood's marks. *Id.* ¶ 14 ("By virtue of such increased likelihood of confusion, consumers will be deceived into purchasing Defendant's products, thinking them to be the products of Plaintiff, resulting in lost profits.").

To be sure, loss of control and loss of reputation frequently are sufficient in trademark cases to support a grant of preliminary relief. *See, e.g.*, *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361 (S.D.N.Y. 2018) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial, because loss of control over one's reputation is neither calculable nor precisely compensable.") (quoting *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010)). But, in those cases, the moving party has relied on something more than the conclusory assertions of its president that it will suffer irreparable harm. *See, e.g.*, *U.S. Polo Ass'n*, 800 F. Supp. 2d at 528-29 (holding that the owners of the Polo brand could enjoin a national polo association from branding its fragrance with a logo of a man on horseback, where the Polo brand was very familiar and experts testified that there was a high risk of confusion between the brands).

On the facts here, Guttman's conclusory statements are not sufficient to carry Algood's burden of establishing irreparable harm. This is not a case in which a plaintiff seeks to prevent a company by stealth from suddenly launching a competing product line that free rides off of the plaintiff's established mark. *See, e.g.*, *Juicy Couture*, 930 F. Supp. 2d at 499-501 (holding that a well-known apparel brand could enjoin a competitor from marketing cheaper apparel using the same mark with the same lettering). Caster has been in operation and selling casters since at least 2000. Compl. ¶ 12. It has sold Ergomaxx products since at least 2015 (and applied for trademark designation in 2016) and used Twergomaxx since at least 2019. *Id.* ¶¶ 13-15. In these

circumstances, and without passing on the merits over who has greater rights in the use of the Maxx mark, it is conspicuous that Plaintiff has been unable to offer any evidence of actual consumer confusion or actual or threatened lost sales to support its claim.  *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (holding that there is no irreparable harm where "the alleged loss of goodwill was doubtful")

Finally, Plaintiff's fear that, having started to use Maxx with Ergomaxx and Twergo Maxx, Caster will now start to use Maxx on a stand-alone basis to promote other products does not alone provide a basis for preliminary injunctive relief.  To invoke the Court's assistance, a moving party must offer more than speculation.  *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (holding that an irreparable injury must be "neither remote nor speculative, but actual and imminent").  It must show a real, immediate, threat of irreparable harm.  Caster has declared under oath that it has no plans to use Maxx to promote any other products.  Algood has offered no evidence to rebut that testimony.  Its concern that Caster will do so is pure speculation at this point, and insufficient to support an injunction.

**B.      Likelihood of Success**

Plaintiff also has not presented sufficient evidence at this stage for the Court to conclude that there is a likelihood of success.  In the Second Circuit, a likelihood of confusion is assessed according to an eight-factor test, under which a court should examine: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap,"; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers."  *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

9

Although Algood disputes it, the evidence currently before the Court indicates that Algood and Caster serve different portions of the caster market.  Although Algood argues that the two companies compete, the declarations suggest that Caster's Ergomaxx and Twergo Maxx lines are heavy weight, industrial casters, while Algood's "Maxx" line consists of low and middle-weight casters.  Dkt. 22-3 ¶ 9.  Plaintiff has not offered evidence that purchasers are likely to confuse the two products, as the products would be used for different purposes.  Further, as mentioned above, Algood has not provided any evidence of actual confusion on the part of customers during the time Casters has used the Ergomaxx and Twergo Maxx designations.  Finally, from the fact that Algood markets primarily at trade shows and Caster sells only through catalogues and online, the Court infers that the consumers for the casters at issue are sophisticated, and would not confuse Caster's products with Algood's simply by Caster's use of the word "Maxx."  Thus, the Court finds that the likelihood of confusion between Algood's mark and Caster's is not sufficient to justify the issuance of preliminary relief.

C.     **Balance of the Equities**

The Court additionally observes that the balance of equities does not necessarily tilt in Algood's favor.  Although on this record Algood has an interest in protecting the term "Maxx" in connection with its products, Caster too has an interest in using that term in connection with its products Ergomaxx and Twergo Maxx.  It has used "Ergonomically Ergomaxx Engineered" for a half-decade and Twergo Maxx for over a year.  It presumably has sunk resources and its good will in those brands just as Algood has sunk goodwill into its brands.  Thus, the Court cannot say on this record that the balance of equities clearly favors Algood at this point in the litigation.

## CONCLUSION

For the forgoing reasons, Algood's motion for a preliminary injunction and for a

temporary restraining order is DENIED.

The parties are directed to submit a proposed Case Management Plan and Scheduling Order to the Court by September 11, 2020 at 5:00 p.m., with an eye to a speedy resolution of this matter. The Court will hold an initial pretrial conference in this matter on September 15, 2020, at 10:00 a.m. The parties are directed to dial into the Court's teleconference line at (888) 251-2909, Access Code 2123101, and follow the necessary prompts.

SO ORDERED.

Dated: September 4, 2020
      New York, New York

                                             LEWIS J. LIMAN
                                       United States District Judge